**U.S. DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| West Coast Productions, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number 1:11-cv-00057-CKK |
| | ) | |
| DOES 1 – 5829 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW CONCERNING ISSUES RAISED IN MAY 23, 2011**
**ORDER [DOC. 77]**

Plaintiff WEST COAST PRODUCTIONS, INC. ("West Coast"), by counsel, respectfully

submits this Memorandum of Law in Accordance with this Court's Order of May 23, 2011 [Doc.

77] to assist the Court in its consideration of certain issues in this case:

**I.**  **A subpoena seeking the identity of a John Doe defendant should not**
**be quashed on the basis that the Court may lack personal jurisdiction**
**over that Defendant.**

Determination of the Court's jurisdiction over a particular Doe Defendant is not

appropriate on a motion to quash a subpoena and is premature at this time, when Plaintiff is still

conducting discovery to ascertain the identities of the Doe Defendants and has not yet named any

individual as a Defendant.

In a similar case, *Sony Music Entm't, Inc. v. Does 1–40*, 326 F.Supp.2d 556, 567-568

(S.D.N.Y. 2004), that court rejected a similar argument to quash a subpoena based on personal

jurisdiction, holding that such a determination was premature.[1]   The court stated that it had

---

[1]  Though the court's decision primarily responded to arguments advanced by amicus
organizations, the court did recognize that a letter to the Court from an attorney for a Jane Doe

discretion to allow discovery to determine the basis for personal jurisdiction and that without the identifying information sought by the plaintiffs in the subpoena to an ISP, "it would be difficult to assess properly the existence of personal jurisdiction over the Doe defendants." *Id.* at 567. The court stated that such an analysis would require more of "an evaluation of the contacts between the various defendants and the forum state" and concluded by "holding at this stage that personal jurisdiction is lacking would be premature." *Id.; see London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 180-181 (D. Mass. 2008) (stating that affidavit of doe defendant claim she was not a resident of the forum state was an insufficient basis to disallow discovery); *see also Arista Records LLC v. Does 1-16*, 2009 WL 414060, *7 (N.D.N.Y February 18, 2009) (denying argument that court lacked personal jurisdiction over doe defendants, stating that "[w]ithout the identifying information, an assessment of personal jurisdiction would be idle speculation").

Further, this Court, Judge Howell, recently addressed the issue of personal jurisdiction. Therein, the Court stated that "[g]iven that the defendants have yet to be identified, the Court believes that evaluating the defendants' jurisdictional defenses at this procedural juncture is premature." *Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at p. 13. The Court further stated that "[w]hen the defendants are named, they will have the opportunity to file appropriate motions challenging the Court's jurisdiction and that will be the appropriate time to consider this issue." *Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at p. 18.[2] On May 12, 2011, Judge Howell denied several motions

---

joined the arguments in the amici's filing, including an objection to the subpoena based on lack of personal jurisdiction, and a letter from the Jane Doe explicitly contested personal jurisdiction. *Sony Music Entm't, Inc. v. Does 1–40*, 326 F.Supp.2d at 567, fn. 8.

[2] Judge Howell issued nearly identical memorandum opinions in two other cases in this Court – *Call of the Wild Movie, LLC v. Does 1-358*, Case No. 10-455, Doc. No. 40; *Donkeyball Movie, LLC v. Does 1-171*, Case No. 10-1520, Doc. No. 26.

to quash and to dismiss based on personal jurisdiction grounds.  *Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. Nos. 133, 134.[3]  Lastly, Judge Collyer has ruled in a similar case pending in this Court that arguments related to personal jurisdiction and joinder are premature until Plaintiff actually names any Defendants.  *West Bay One, Inc. v. Does 1-1,653*, Case No. 10-481, Doc. No. 36 at p. 5, fn. 2 (also available at 2010 WL 3522265) ("John Doe #2 also asserts that the Court lacks personal jurisdiction over him and that joinder of the numerous Doe defendants here is improper. Mr. Doe #2 may raise these issues with the Court when he has been identified and Plaintiff names him as a defendant in this case.").

Here, quashing the subpoena based on personal jurisdiction would likewise be premature. Plaintiff has not yet received all of the information sought from the ISPs for all of the Doe Defendants.  Allowing Plaintiff to obtain the information from the ISPs is important for numerous reasons.

First, obtaining the information from the ISPs gives Plaintiff verification of the IP address associated with each Doe Defendant's ISP account.  As the ISPs are the only ones that can verify the link between a particular IP address on a given date and time with one of its customers, Plaintiff's only method to obtain this verified evidence is from the ISPs in response to the subpoenas.  Because Plaintiff would otherwise be entitled to discovery to challenge this Doe Defendant's statements about personal jurisdiction and because identifying discovery is already in progress, Plaintiff should at least be entitled to complete its discovery to independently verify the Doe Defendants' statements.

---

[3]  Judge Howell issued nearly identical memorandum opinions in three other cases in this Court – *Call of the Wild Movie, LLC v. Does 1-358*, Case No. 10-455, Doc. No. 56; *Voltage Pictures, LLC v. Does 1-5,000*, Case No. 10-00873, Doc. No. 150; *Donkeyball Movie, LLC v. Does 1-171*, Case No. 10-1520, Doc. No. 32.

Second, the information sought from the ISPs gives more information than simply the name and address of the Doe Defendants.  As requested in the subpoenas, some ISPs are able to provide the Doe Defendants' modem's Media Access Control (MAC) number, which provides Plaintiff with further evidence to substantiate its case.

It must be noted that the arguments related to personal jurisdiction have not cited a single legal basis or authority where a motion to dismiss a Doe Defendant was granted before the plaintiff actually specifically named that Doe Defendant.  While many motions generally state that the Doe Defendant does not reside or transact business in this jurisdiction, even if these statements are accepted as true, they do not conclusively establish that the Court lacks personal jurisdiction over a particular Doe Defendant.

For example, a Doe Defendant could have specifically directed the alleged infringing activities to the District of Columbia by downloading or uploading Plaintiff's copyrighted work with another Defendant residing in the District of Columbia or because the Doe Defendant committed the infringing activities while visiting the jurisdiction.  Therefore, because Plaintiff has not received all of the identifying information from all of the Does, it is premature to dismiss any Doe Defendant at this time simply because that Doe Defendant may reside outside of the jurisdiction.

II.    **A subpoena seeking the identity of a John Doe defendant should not be quashed on the basis that the defendant may be improperly joined in the action.**

As articulated below in response to the Court's question # 6, improper joinder is not a ground for dismissing an action or quashing a subpoena.  *See* Fed. R. Civ. P. 21.  Moreover, as shown below in response to the Court's question # 6, the Doe Defendants are properly joined in this case.

4

### III.     A movant who seeks to quash a subpoena in this action should not be permitted to proceed anonymously.

The Doe Defendants should be required to properly identify themselves on any purported motions.

Both the Federal Rules of Civil Procedure and Local Civil Rules require that persons filing papers in this Court identify themselves by name and provide contact information.  "Every ... written motion, and other paper must be signed ... by a party personally if the party is unrepresented.  The paper must state the signer's address, e-mail address, and telephone number ... The court must strike an unsigned paper unless the omission is promptly corrected after being called to the ... party's attention."  Fed. R. Civ. P. Rule 11(a).  "The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party. ... If the party is appearing *pro se*, the caption shall also include the party's telephone number."  LCvR Rule 5.1(e)(1).

Though some exceptions to this rule may exist for sensitive personal matters (*see generally Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)), parties are generally expected to identify themselves to "'protect[] the public's legitimate interest in knowing all of the facts involved, including the identities of the parties.'"  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)).  "[I]t is the responsibility of judges to avoid secrecy ... and the concealment of the judicial process from public view.  Courts are public institutions which exist for the public to serve the public interest."  *Doe v. Fed. Bureau of Investigation*, 218 F.R.D. 256, 258 (D. Colo. 2003); *see also Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068-69 (9th Cir. 2000) (stating that parties may "use pseudonyms in the unusual case when

nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment") (internal quotations omitted).[4]

Additionally, while the Doe Defendants may argue that the First Amendment should shield their identification, the Court must consider the impact of a party's anonymity on both the public interest in open proceedings and on fairness to the opposing party by weighing a party's "privacy concerns against the presumption of openness of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981); *see Microsoft Corp.*, 56 F.3d at 1464.  Factors to consider include: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.  *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

As this Court has recently ruled in similar cases of alleged copyright infringement through the use of BitTorrent, the Doe Defendants should not be permitted to proceed anonymously, especially considering that they have no cognizable claim of privacy in their identifying/subscriber information (discussed below).  *See Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-2,094*, Case No. 10-453, Order of September 16, 2010, Doc. No. 91 (Collyer, J.); *West Bay One, Inc. v. Does 1-1,653*, Case No. 10-481, Order of September 16,

---

[4]  Identification of the parties is also necessary to protect the integrity of the litigation process by enabling the presiding judge to determine whether recusal may be necessary.  *See Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988).

2010, Doc. No. 44 (Collyer, J.); *Maverick Entertainment Group, Inc. v. Does 1-1,000*, Case No. 10-569, Order of December 1, 2010, Doc. No. 17 (Leon, J.); *Donkeyball Movie, LLC v. Does 1-171*, Case No. 10-1520, Order of January 14, 2011, Doc. No. 18 (Sullivan, J.).  Most recently, Judge Howell provided an extensive and well reasoned opinion in two similar cases pending in this Court, wherein Judge Howell found that the Doe Defendants' desire to "submit motions and proceed anonymously in this case does not override the public's interest in identifying the parties" and that the Doe Defendant must at least reveal their identities and provide identifying information to the Court.  *Call of the Wild Movie, LLC v. Does 1-358*, Case No. 10-455, Order of February 24, 2011, Doc. No. 25 at p. 9 (D.D.C.); *Voltage Pictures, LLC v. Does 1-5,000*, Case No. 10-00873, Order of February 24, 2011, Doc. No. 27 at p. 9 (D.D.C.).[5]

Additionally, as further detailed in Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [Doc No. 4], a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment. *See Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008); *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (Kollar-Kotelly, C.) (finding that the "speech" at issue was that doe defendant's alleged infringement of copyrights and that "courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights"); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in

---

[5]  Judge Howell made this determination after evaluating all of the factors set forth in *James v. Jacobson*.

downloading and distributing copyrighted songs without permission"); *Arista Records, LLC v. Doe No. 1*, 254 F.R.D. 480, 481 (E.D.N.C. 2008); *U.S. v. Hambrick*, 55 F. Supp. 2d 504, 508 (W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).

As this Court has recently noted in denying similar motions to quash, "Internet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their Internet Service Providers." *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-2,094*, Case No. 10-453, 2010 WL 3522256, at *3 (D.D.C. Sept. 10, 2010) (Collyer, J.) (citations omitted) [Doc. Nos. 44-45]; *West Bay One, Inc. v. Does 1-1,653*, Case No. 10-481, 2010 WL 3522265 (D.D.C. Sept. 10, 2010) (Collyer, J.) [Doc. Nos. 36-37]; *see also Donkeyball Movie LLC v. Does 1-171*, Case No. 10-1520, Order of January 14, 2011, Doc. No. 18 (Sullivan, J.); *Maverick Entm't Grp., Inc. v. Does 1-4,350*, Case No. 10-569, Order of December 1, 2010, Doc. No. 17 (Leon, J.).[6]

Additionally, this Court also recently provided a Memorandum Opinion with a thorough analysis of the Doe Defendants' First Amendment right to anonymity.  The Court concluded:

> Upon balancing the putative defendants' First Amendment rights to anonymity and the plaintiffs' need for the identifying information, the Court finds that the plaintiffs' need overrides the putative defendants' right to use BitTorrent anonymously. The putative defendants' asserted First Amendment right to anonymity in this context does not shield them from allegations of copyright infringement. The plaintiffs therefore may obtain from ISPs information identifying the putative defendants.

[*Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at p. 27; *see also Call of the Wild Movie, LLC v. Does 1-358*, Case No. 10-455, Doc. No. 40; *Donkeyball Movie, LLC v. Does 1-171*, Case No. 10-1520, Doc. No. 26].

---

[6]  *See also G2 Productions, LLC v. Does 1-83*, Case No. 10-041, Order of May 3, 2010, Doc. No. 18 (D.D.C.) (Kollar-Kotelly, J.) (denying Doe Defendant motion to quash); *Worldwide Film Entertainment, LLC v. Does 1-749*, Case No. 10-0038, Orders of May 13, 2010, May 17, 2010, and May 20, 2010, Doc. Nos. 21-26 (D.D.C.) (Robinson, J.) (same).

Here, Plaintiff has demonstrated an absolute need for the disclosure, as it cannot prosecute its case without it.  Further, Plaintiff has shown good cause for obtaining information related to all of the Doe Defendants from the non-party ISPs, especially considering that the ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data.

Additionally, Plaintiff is only seeking limited information sufficient to identify each Doe Defendant and the corresponding IP address, and Plaintiff will only use that information in this lawsuit.  Therefore, the Doe Defendants are protected from any improper disclosure or use of their information.  Overall, the Doe Defendants' exceedingly small First Amendment privacy interests are greatly outweighed by Plaintiff's need for the information to prosecute its case and protects it copyrights.

**IV.**     **A John Doe defendant can not raise objections to defects in the service of a subpoena or other procedural defects, such as the failure to describe the information requested, as a basis for a motion to quash.**

The Doe Defendants only have standing to object that the subpoenas require the production of privileged information.  Initially, it must be noted that this Court, and only this Court, has jurisdiction over the subpoenas at issue.

The District of Columbia district court is the only court that has jurisdiction to quash or enforce the subpoena at issue.  In *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) that court noted the various provisions of Rule 45 that specifically refer to "the issuing court" – Fed. R. Civ. P. 45(c)(3)(A) (to quash or modify a subpoena), Fed. R. Civ. P. 45(c)(2)(B) (enforcement of a subpoena following objections), and Fed. R. Civ. P. 45(e) (contempt for failure to obey a subpoena).  "All of this language suggests that only the issuing court has the power to act on its subpoenas.  Subpoenas are process of the issuing court, and nothing in the Rules even hints that

any other court may be given the power to quash or enforce them." *In re Sealed Case*, 141 F.3d at 341 (internal citations omitted).

Here, the subpoenas were "issued" out of the District of Columbia district court for this case pending in this Court. As the issuing court, this Court and only this Court has jurisdiction to act upon the subpoena.[7]

A person served a discovery subpoena may move either for a protective order under Rule 26(c) or for an order quashing or modifying the subpoena under Rule 45(c)(3). Rule 26(c) authorizes district courts, upon a showing of "good cause" by "a party or by the person from whom discovery is sought" to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 45(c)(3) provides that the court may quash or modify the subpoena if it requires disclosure of privileged or other protected matter, if no exception or waiver applies, or if it subjects a person to undue burden.

The Doe Defendants have no standing to object. "Ordinarily a party does not have standing to object to a subpoena served on a non-party, but a party does have standing to object to a subpoena served upon a non-party which requires the production of privileged information." *Covad Commun'ns Co. v. Revonet, Inc.*, No. 09-MC-102, 2009 WL 3739278, at *3 (D.S.D. Nov.

---

[7] The subpoenas were issued from the proper court, as they was issued from the court where production is to be made, i.e. where the documents are to be sent – the district court for the District of Columbia. Fed. R. Civ. P., Rule 45(a)(2)(C) states that "[a] subpoena must [be] issue[d] ... from the court for the district where the production or inspection is to be made." "'Production' refers to the delivery of documents, not their retrieval, and therefore 'the district in which the production ... is to be made' is not the district in which the documents are housed but the district in which the subpoenaed party is required to turn them over." *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 412 (3d Cir. 2004); *see James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 19 (D.D.C. 2002); *see also Oracle, USA, Inc. v. SAP AG*, 2009 WL 1011321, *2 (D. Colo. April 14, 2009) (summarizing court holdings across the country as "uniformly" rejecting the notion that production takes place where the sender resides).

4, 2009) (citing *E.E.O.C. v. Danka Indus., Inc.*, 990 F. Supp. 1138, 1141 (E.D. Mo. 1997));

*Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) (Facciola, J.) ("A

motion to quash, or for a protective order, should generally be made by the person from whom

the documents or things are requested." [citing 9A Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 2459 (2d ed.1995)]).  However, that standing to object should

limited to only challenging the subpoena on the grounds that it requires disclosure of information

"privileged at common law or by statute or rule" and not any other grounds.  *See Windsor v.

Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997).  "The general rule is that a party has no

standing to quash a subpoena served upon a third party, except as to claims of privilege relating

to the documents being sought."  *Id.* (citation omitted); *see also Johnson v. Gmeinder*, 191

F.R.D. 638, 639 n. 2 (D. Kan. 2000); *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa.

2001); *Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007) (Facciola, J.)

(stating that "[t]o make a legitimate claim of privilege the Defendants would have had to show

some reason to believe that the subpoena threatened the disclosure of information that was

protected by a privilege that *these* Defendants could claim") (emphasis added); *Amobi v. D.C.

Dept. of Corrections*, 257 F.R.D. 8, 9-10 (D.D.C. 2009) (Facciola, J.) (holding that District of

Columbia Department of Corrections had no right to claim work product or attorney-client

privilege with regard to United States Attorney's Office's files relating to former corrections

officer's criminal prosecution for assaulting inmate, and thus did not have standing to object to

subpoena served on USAO by officer seeking files in connection with officer's civil rights action

against Department).

**V.      A John Doe defendant who has not yet been named in the Complaint cannot seek dismissal of the action based on a lack of personal jurisdiction.**

The Court should not dismiss any Doe Defendant until Plaintiff has actually named that person to the lawsuit.

The plain language of the Federal Rules of Civil Procedure contemplates that a defendant can only respond to the complaint when that defendant has been named as a party and after a summons has been issued and served on a defendant (or service is waived by the defendant).  For example, Rule 4 states that a summons must "*name* the court and the parties" and "be directed to the defendant."  Fed. R. Civ. P. 4(a)(1)(A) and (B) (emphasis added).

Only then can the provisions of the Federal Rules of Civil Procedure, such as when a defendant must file a responsive pleading or motion, take effect.  Therein, one of the things the summons must do is advise the defendant of the obligation to "appear and defend" and state the time the defendant has for doing so, whether after being served with the summons or by waiving service.  *See* Fed. R. Civ. P. 4(a)(1)(D).  The timeframe in which a defendant has to "appear and defend" therefore does not start until, at the earliest, a summons specifically names the defendant and is directed to that defendant.[8]

Accordingly, a Doe Defendant's motion to dismiss should be denied because there is no authority that such a motion is even permitted.  As stated in Fed. R. Civ. P. 12(b):

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading *if one is required*. But a party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction…A motion asserting any of these defenses must be made before pleading *if a responsive pleading is allowed*. … If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that

---

[8]  While the Federal Rules of Civil Procedure do not explicitly define "party," the plain language of multiple provisions suggests that a person is only a party to a case when that person is identified and specified by name in the case.  For example, Fed. R. Civ. P. 17 states that an "action must be prosecuted in the name of the real party in interest," and Fed. R. Civ. P. 5 contemplates service of papers on "every party" wherein the general provisions for service contemplate that the party's identity must be known (*See* Fed. R. Civ. P. 5(b)(2)).

claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b) (emphasis added).

The language clearly contemplates that a motion to dismiss for lack of personal jurisdiction is only appropriate if a responsive pleading is required or allowed. A responsive pleading is not yet required of the anonymous Doe Defendants because their deadline to appear and defend has not even started. They are not yet named parties to the case, and no summons has been issued with their names or directed at them.

In *Zwebner v. John Does Anonymous Foundation, Inc.*, 2001 WL 210173 (D.Or. 2001), the court allowed an unnamed and unserved doe defendant to file an answer. *Id.* at *3 (as the judge noted, "[n]either the parties, nor I, have found any cases on the issue faced here"). However, there the plaintiff alleged a specific alias name for the doe defendant, and the doe defendant's answer admitted using the alias name as described in the Complaint. *See id.* Accordingly, it was established that the person who filed the answer was definitively the doe defendant because that defendant admitted committing the alleged acts.

That is not the case here. The Doe Defendants have not admitted to engaging in the activities alleged by Plaintiff, and they have not even admitted to owning the IP addresses associated with the infringing activity. Rather, the moving Doe Defendants generally assert the exact opposite – that they did not engage in any infringing activity.

In fact, the court in <u>Zwebner</u> recognized this distinction when it noted that a Massachusetts court declined to allow the unnamed defendant to file a motion to dismiss based on lack of personal jurisdiction in a companion case:

> Plaintiff suggests that in a similar case filed by plaintiff in Massachusetts and currently pending there, the court rejected French's attempt to appear in the case. The pleadings in that case show that plaintiff named as defendants Robert

13

Villasenor and John Does 1-100. In the Complaint, plaintiff alleges that John Doe
1 used the alias "InternetZorro" when communicating over the Internet. Plaintiff
also alleges that Villasenor published statements about plaintiff on the JDAF
website, which plaintiff contends is controlled by French. Plaintiff further alleges
that French published "a series of innuendos" about plaintiff on the Internet and
that InternetZorro published "numerous false and defamatory statements about
Zwebner." [¶] French filed a motion to dismiss contending that the court lacked
personal jurisdiction over him. The court declined to hear French's motion
because French was not a party to the action. [¶] Thus, unlike in the present case,
French did not appear and answer admitting he was InternetZorro, and the precise
question at issue here was not addressed by the Massachusetts court.

*Id.* at fn. 2.

Although not as analogous to this case, and not dealing with anonymous defendants,

*Webster Industries, Inc. v. Northwood Doors, Inc.*, 234 F.Supp.2d 981 (N.D. Iowa 2002),

provides another example of a court refusing to entertain a motion to dismiss based on lack of

personal jurisdiction because it was premature.  There, a named defendant, China Hardwood

Imports, attempted to make a "special appearance" to contest service of process and jurisdiction

based on attempted service and a letter from plaintiff entitled "Notice of Intent to File Written

Application for Default."  *See id.* at 987-988.  The court noted that there was not yet any attempt

by the plaintiffs to actually invoke the court's personal jurisdiction over China Hardwood

Imports, as the plaintiff had not yet filed any application for default, so the court did not even

entertain the merits of that defendant's motion to dismiss for lack of personal jurisdiction.  *See

id*. at 988.

Similarly here, Plaintiff has not attempted to invoke the Court's personal jurisdiction over

any particular Doe Defendant.  Plaintiff has not named any Defendant or sought any action by

the Court over any particular Doe Defendant.  Rather, Plaintiff has only requested discovery from the third-party ISPs.[9]

### VI.    The Court should find that the John Doe defendants have been properly joined in this action.

Joinder is proper at this time.  To summarize the argument in opposition to the joinder argument, any consideration of joinder is premature and inappropriate at this stage.

The Federal Rules of Civil Procedure, specifically Rule 20, provide for the permissive joinder of parties.  As relevant to this case, Rule 20 states that "[p]ersons…may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. Rule 20(a)(2).  Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.

"Rules 20 and 21 are intended to promote trial convenience, to expedite the determination of litigation, and *to avoid multiplicity of suits*."  *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964) (emphasis added).  These rules should be construed liberally, as "[j]oinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138 (1966).  Ultimately, a determination on the

---

[9]  Again, Judges Collyer and Howell have specifically addressed this issue, and both have stated that the appropriate time to consider personal jurisdiction arguments is after a Doe Defendant is named to the lawsuit.  *See, e.g., Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at p. 18 (Howell), J.); *West Bay One, Inc. v. Does 1-1,653*, Case No. 10-481, Doc. No. 36 at p. 5, fn. 2 (Collyer, J.).

question of joinder rests within the discretion of the trial court. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

In satisfying the first prong of Rule 20(a), "a case by case approach is generally pursued." *Id.*, 497 F.2d at 1333. In analyzing the first prong, *Mosley* found that "[n]o hard and fast rules have been established under the rule." *Id.* In looking at Rule 13(a) dealing with counterclaims as guidance, that court adopted the same construction of the terms "transaction or occurrence":

> "[t]ransaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.

*Id.*; *see Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (stating that the "logical relationship test is flexible").[10]

As to the second prong of Rules 20(a), "[t]he rule does not require that all questions of law and fact raised by the dispute be common….common questions have been found to exist in a wide range of context." *Mosley*, 497 F.2d at 1334. Lastly, the court should consider whether an order under Rule 21 would prejudice any party or would result in undue delay. *See Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987) (stating that Rule 21 must be read in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party).

---

[10] In *Mosley v. General Motors Corp., supra*, the court found the plaintiffs had asserted a right to relief arising out of the same transactions or occurrences where each of the ten plaintiffs alleged that he had been injured by the same *general policy* of discrimination on the part of the defendants, regardless of the fact that the different plaintiffs asserted claims for discrimination occurring at different times for each plaintiff. *See Mosley*, 497 F.2d at 1333-1334.

Here, Plaintiff has alleged, and Plaintiff has shown in its motion for expedited discovery, that each and every Doe Defendant, without the permission or consent of the Plaintiff, has used an online media distribution system to copy and distribute to the public, including by making available for distribution to others, Plaintiff's copyrighted Movie.  [Doc. No. 1 (Complaint) at ¶ 11].  In doing so, each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution, constituting infringement of Plaintiff's exclusive rights protected under the Copyright Act of 1976 (17 US.C. § 101 *et seq*.).  *Id.*

As alleged, the manner of the illegal transfer of Plaintiff's Movie by Doe Defendants has been through a "BitTorrent protocol" (or "torrent") peer-to-peer (P2P) network, which is significantly different in its architecture than the older P2P protocols used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella.  [Doc. No. 1 (Complaint) at ¶ 12].  The BitTorrent protocol used by the Doe Defendants to copy and distribute Plaintiff's Movie allow computers with low bandwidth capabilities to participate in large data transfers across a network, which was more problematic with the older P2P protocols.  [Doc. No. 1 (Complaint) at ¶¶ 12-13].  Under the BitTorrent protocol, the initial file-provider intentionally elects to share or upload a file via a BitTorrent network.  *Id.*  This is called "seeding."  *Id.*  Other users ("peers") on the network connect to the seeder to download.  *Id.*  As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from where the file can be downloaded, which means that such additional user's computer is connected not only to the seeder/uploader but also to other peer/downloaders.  *Id.*  Unlike the older P2P protocols, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together comprise the whole.  *Id.*  This means that every "node" or peer user who has a copy of the infringing copyrighted material on such a

network—or even a portion of a copy—can also be a source of download for that infringing file, potentially both copying and distributing the infringing work simultaneously. *Id.*

This distributed nature leads to a rapid viral spreading of a file through peer users, all of whom are both uploading and downloading portions of the file simultaneously. [Doc. No. 1 (Complaint) at ¶ 14]. As more peers join the swarm, the likelihood of a successful download increases. *Id.* Because of the nature of the BitTorrent protocols, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even likely, source of the file for the subsequent peer. *Id.* Essentially, because of the nature of the swarm downloads as described above, every infringer is simultaneously stealing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country. *See id.*

As shown above, the nature of the infringement alleged in this case tends to show that all Doe Defendants engaged in the same series of transactions and occurrences. Each Doe Defendant is alleged to have participated in a swarm with other Doe Defendants, all of which was targeted at one thing – illegally downloading/uploading Plaintiff's copyrighted Movie. Even though all of the Doe Defendants may not have participated on the very same day and time, all of the events involving all of the Doe Defendants are logically related to the sharing of the seed file (Plaintiff's copyrighted Movie in digital form).

Again, this is significantly different from the prior cases involving copyright infringement via P2P systems. In those earlier cases, the doe defendants utilized platforms such as Napster, Grokster, Kazaa, and Limewire. Using those platforms, the infringer basically copied a work from one other user. Each particular act of infringement involved a specific one-

on-one connection between two users for that specific file. Once the sharing of that file was over, so presumably was the relationship between the infringers.

Further, because those cases dealt with multiple rights holders asserting claims for multiple copyrighted works, the infringements tended to be more independent and unrelated acts amongst the various doe defendants. For example, in the prior cases each doe defendant was typically alleged to have downloaded a number of different songs—protected by a number of different copyrights and owned by a number of different plaintiff copyright holders—from various third-party infringers.

Here, the use of a torrent P2P platform for the infringement of one copyrighted work is an ongoing and continuous series of infringements. In order for each and every Doe Defendant to obtain a download of Plaintiff's Movie, each and every Doe Defendant must link to a seed file of Plaintiff's Movie. Because a seed file can only exist from another Doe Defendant, each Doe Defendant is necessarily intertwined.

Overall, because of the swarm nature of the torrent file sharing, Plaintiff's alleged facts tend to show that the Doe Defendants acted in concert in an ongoing effort to infringe Plaintiff's work. Whether each Doe Defendant actually illegally downloaded, uploaded, and/or made Plaintiff's work available for others to infringe, all Doe Defendants acted together in the swarm.[11]

---

[11] In *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551 (N.D. Ill. 1964), the court found that the allegations made against the prospective defendants arose out of the same factual situation and stated that "[i]t would seem that where the party to be added allegedly made possible that infringement, induced it and contributed thereto, judicial economy would require that party's presence in the original infringement suit, as well." *Id.* at 554. Here, while all Doe Defendants acted in concert and contributed to distributing Plaintiff's copyrighted Movie, each Doe Defendant's own acts of downloading and/or distributing Plaintiff's Movie also constitutes an infringement of Plaintiff's exclusive rights of reproduction and distribution under the Copyright Act of 1976. *See generally* 17 U.S.C. § 106.

Additionally, the fact that Plaintiff is alleging infringement of only one work tends to show a relationship among all Doe Defendants.  In *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (D.C. Tex. 2004), the court specifically held that joinder of unrelated defendants who allegedly infringed the same patent was proper.  The court stated:

> A logical relationship exists if there is some nucleus of operative facts or law….MyMail alleges that all defendants have infringed the '290 patent….The UOL Defendants urge the Court to adopt the rule that infringement by different defendants does not satisfy Rule 20's same transaction requirement, but the Court finds that this interpretation of Rule 20 is a hypertechnical one that perhaps fails to recognize the realities of complex, and particularly patent, litigation. In essence, the UOL Defendants advocate a rule that requires separate proceedings simply because unrelated defendants are alleged to have infringed the same patent. The Court disagrees with such a per se rule that elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes.

*Id.* at 456-457 (internal citations omitted); *see Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615 (D. Kan. 2006) ("The first requirement is met because Sprint's claims against all the defendants arise out of the same transaction or occurrence. Most notably, Sprint alleges that each of the defendants has infringed the same seven patents.").

Also, in *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630 (D. Kan. 2004), the court held that the satellite broadcaster's action against alleged owners of pirate access devices arose out of same "transaction" for purposes of the joinder rule.  There, the broadcaster alleged that each defendant purchased one or more devices, identical or nearly identical, designed to illegally intercept satellite signals or facilitate illegal interception, and records and other information that served as the basis of broadcaster's claims arose from the same investigations and raids.  *Id.* at 632.

Similarly, in this case, Plaintiff alleges that all Doe Defendants utilized an identical or nearly identical torrent P2P protocol to illegally infringe Plaintiff's one copyrighted work.

Additionally, the evidence that will serve as the basis of Plaintiff's claims against all Doe Defendants arose from the same investigation by the third-party technology company utilized by Plaintiff.  Therefore, Plaintiff has shown that the liability for all Doe Defendants arises out of the same transaction or series of transactions, meeting the first requirement of Rule 20(a).

Also, a question of law or fact common to all Doe Defendants will arise in the action. Plaintiff has alleged identical claims against all Doe Defendants for each and every Doe Defendant's alleged use of an online media distribution system to distribute Plaintiff's Movie as part of a single swarm.  [*See* Doc. No. 1 (Complaint) at ¶ 11]  Therein, Plaintiff has alleged similar questions of fact, including without limitation whether each and every Doe Defendant did use a torrent protocol to download and/or distribute Plaintiff's Movie.  Further, Plaintiff has alleged the exact same legal claim against each and every Doe Defendant – "Infringement of Registered Copyright."  [*See* Doc. No. 1 (Complaint) at pp. 8-10].

Therefore, Plaintiff has satisfied the second prong of Rule 20(a)(2), as Plaintiff's common cause of action will raise similar questions of law, including without limitation the application of the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*), particularly in the context of file-sharing across the BitTorrent protocol.  *See DIRECTV, Inc. v. Barrett*, 220 F.R.D. at 632 ("The court also concludes that the claims against the defendants involve at least one common question of law or fact.  DIRECTV seeks redress under identical legal theories against each of the defendants in each case.  The claims in each complaint and the law under which they are brought are the same.  Based on DIRECTV's allegations, the claims in each case involve at least one common question of law.").

Other courts dealing with cases for copyright infringement against unknown doe defendants have specifically found that joinder of the defendants was proper under Rule 20,

especially at the early outset of these types of cases.  Most notably, the District Court of Maine

issued a well reasoned and analyzed opinion in *Arista Records, LLC v. Does 1-27*, 584 F. Supp.

2d 240 (D. Me. 2008), noting the legal requirements and the practical aspects of joinder in such

cases.

There, a group of copyright owners and licensees brought a copyright infringement action

against 27 unidentified students of the University of Maine.  *See* 584 F. Supp. 2d at 241.  In

relation to a number of motions to dismiss filed by various doe defendants, the magistrate judge

suggested that the court enter an order to show cause why the plaintiffs should not be sanctioned

pursuant to Rule 11, recommending that the plaintiffs demonstrate that they have adequate

evidentiary support for their factual contentions regarding joinder.  *Id.* at 250-251.  The court did

not act on the recommendation, and did not issue the show cause order, but did address the

joinder issue in the context of the motions to dismiss.  *See id.* at 251.

The court stated that it was not troubled with the joinder of the multiple doe defendants in

one lawsuit.  *Id.*  The court also based its conclusion upon consideration of the plaintiffs'

allegations regarding whether they had asserted that their right to relief related to or arose out of

the same transaction or occurrence.  The court noted that:

> the Complaint alleges the Doe Defendants (1) engaged in copyright infringement
> on the internet; (2) uploaded and downloaded copyrighted sound recordings using
> peer-to-peer networks; and (3) accessed the peer-to-peer network though a
> common ISP--the same University. The Plaintiffs further assert that twenty-five
> of the twenty-seven Doe Defendants used the same peer-to-peer network and
> many infringed the same copyrighted sound recording or different copyrighted
> sound recordings from the same artist. Finally, they allege that the Doe
> Defendants have been "active participants in what can only be described as an on-
> line music swap meet, unlawfully copying copyrighted works from other users
> and distributing such works to other users."

*Id.* (internal citations omitted).

The court then state that "[a]t the very least, it seems premature to make a final determination that joinder is not permissible under Rule 20." *Id.*[12]  As a practical matter, the court noted that because the court cannot dismiss a case for misjoinder pursuant to Rule 21, the "remedy, then, would be to break up this one lawsuit into individual causes of action, an alternative that does not exactly resonate with practicality."  *Id.* at 251.  Further, the court went on to state:

> Regarding the magistrate judge's concern about the possibility of abuse of the litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as the magistrate judge observes, that the Plaintiffs have not identified and served the Doe Defendants and that they seek their names through this lawsuit. It is also possible that once identified and served, the Doe Defendants will determine that it is in their best interests to resolve the case. But, the Court begins with the premise that the Plaintiffs have a statutorily protected interest in their copyrighted material and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.

*Id.* at 252.

Overall, the District Court of Maine addressed not only Rule 20 but also the same practical arguments presented by Amici.  As with this case, where there is some relationship between unidentified defendants for infringing identical copyrights, it is too premature to definitively state that they have been improperly joined in one lawsuit.  To hold otherwise would

---

[12] In *Arista Records LLC v. Does 1-16*, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), the district court echoed the timing considerations, though with decidedly fewer defendants (four).  The court stated that "[t]o keep this finite community of defendants within this lawsuit will not, at this juncture of the litigation, generate any prejudice or harm to their respective defenses. Moreover, a joint defense may be more advantageous than previously considered. And should any prejudice or conflict arise, the Court can address the matter at that time. As the facts and circumstances become ripe and suggest or warrant severance, all can avail themselves of such a request then. Therefore, at this stage of the litigation, the Court finds that a request to sever the Doe Defendants as premature." *Id.* at *8.

practically prevent copyright holder plaintiffs from being able to protect their material or would unnecessarily burden the courts with additional cases.

Additionally, numerous other courts in similar cases, including this Court, have declined to find misjoinder. Such other cases include, without limitation, *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, C.), *Arista Records LLC v. Does 1-16*, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), and the DIRECTV, Inc. cases cited herein, all of which held that joinder was proper. In fact, in many of the similar music download cases, the plaintiffs submitted a list of over three hundred court orders that have apparently approved joinder in similar cases. *See, e.g., Arista Records, LLC v. Does 1-27*, 584 F. Supp. 2d at 251.[13] Overall, vast prior rulings comport with Plaintiff's position.

Recently, this Court issued a detailed analysis of the joinder issue. Therein, Judge Howell concluded that "the plaintiffs' allegations against the putative defendants in each case meet the requirements for permissive joinder." *Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at p. 6. Further, the Court stated that the Doe Defendants may raise the argument that they are improperly joined when they are identified and named in the case, but severance for misjoinder is premature at this stage of the proceedings. *Maverick Entertainment Group, Inc. v. Does 1-4,350*, Case No. 10-569, Doc. No. 48 at pp. 6-7.[14] Previously, in two similar pending cases in front of Judge Collyer, an order to show cause

---

[13] Plaintiff acknowledges that the use of this list has been criticized by at least two courts. *See Arista Records, LLC v. Does 1-11*, No. 1:07-CV-2828, 2008 WL 4823160, at *6 fn. 7 (N.D. Ohio Nov. 3, 2008); *Fonovisa, Inc. v. Does 1-9*, Civil Action No. 07-1515, 2008 WL 919701, at *5 fn. 10 (W.D. Pa. Apr. 3, 2008).

[14] *See also Call of the Wild Movie, LLC v. Does 1-358*, Case No. 10-455, Doc. No. 40; *Donkeyball Movie, LLC v. Does 1-171*, Case No. 10-1520, Doc. No. 26.

hearing was conducted wherein Judge Collyer ruled that joinder was proper at this stage of the proceedings and "that, at this juncture, the numerous Doe Defendants are not severed due to misjoinder…." *West Bay One, Inc. v. Does 1-1,653*, CA. 1:10-cv-00481-RMC (D.D.C.), Doc. No. 25; *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-2,094*, CA No. 1:10-cv-00453-RMC (D.D.C.), Doc. No. 34.

**Conclusion**

In the foregoing paragraphs Plaintiff has addressed those issues raised by the Court in accordance with this Court's Order of May 23, 2011 [Doc. 77].  For the reasons set forth above, each of the Motions to Quash filed heretofore should be denied.

Respectfully submitted,
West Coast Productions, Inc.

**DATED**:  June 3, 2011

By:     /s/
Ellis L. Bennett, Bar #479059
Dunlap Grubb & Weaver, PLLC
199 Liberty Street, SW
Leesburg, VA 20175
ebennett@dglegal.com
703-777-7319 (telephone)
703-777-3656 (fax)

On Behalf of Kenneth J. Ford, *Not Admitted*
Adult Copyright Company
322 W. Washington Street, Suite 8
Charles Town, WV 25414
kford@adultcopyrightcompany.com
304-945-0288 (telephone)
304-945-0288 (select fax option)
*Attorney for the Plaintiff*